**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KAREN DELOSA o/b/o A.L.D.,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:12-cv-1094-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for Supplemental Security Income under the Social Security Act. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff, on behalf of her daughter, the minor child (herein called "claimant" or "the minor"), applied for Supplemental Security Income, alleging that the minor was disabled. The agency denied Plaintiff's application initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). The ALJ issued an unfavorable decision, finding the claimant to be not disabled since June 20, 2005, the date the application was filed (R. 18-31). The Appeals Council declined to grant review (R. 7-9), making the ALJ's decision the final decision of the Commissioner.

Plaintiff timely filed her complaint in this action, and the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter has been fully briefed and the case is now ripe for review pursuant to 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

## Nature of Claimed Disability

Plaintiff, on behalf of the minor, alleged childhood disability beginning on January 1, 2003, due to attention deficit hyperactivity disorder ('ADHD'), borderline intellectual functioning, and depression (R. 150, 159).

*Summary of Evidence Before the ALJ*

The minor was eleven years old at the time of the administrative hearing (R. 428), a school age child (R. 21), in regular classes in public school.

The medical evidence relating to the pertinent time period is well detailed in the ALJ's opinion and in the interest of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the minor's medical records, the record includes Plaintiff's testimony, testimony of the minor, school reports and records, and opinions from examining and non-examining consultants. By way of summary, the ALJ determined that the minor "has the following severe impairments: borderline intellectual functioning and attention deficit-hyperactivity disorder (ADHD) (20 CFR 416.924(c))," but "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926)" (R. 21). The ALJ then determined that the minor does not have an impairment or combination of impairments that functionally equals the Listings, considering the six domains of function applicable to review of childhood disability applicants (R. 21-31), and was therefore not disabled.

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises only one issue on review, challenging the ALJ's conclusion that the minor's impairments did not satisfy the functional equivalent of a childhood Listing.

An individual under the age of 18 shall be considered disabled if she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(I). As explained by the ALJ in her decision (R. 18-20), the Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. At step one, the child must show that he or she is not engaged in substantial gainful activity; at step two, there must be a showing that the claimant has a medically determinable "severe" impairment or a combination of impairments that is "severe;" and at step three, a showing that his or

her impairment or combination of impairments is of listing-level severity, that is, the impairment(s) meets, medically equals, or functionally equals the severity of an impairment in the listings. *See* 20 C.F.R. § 416.924 (2012).

Evaluation of whether a child meets or *medically* equals a listing uses the same analysis as used for other claimants. *See* 20 C.F.R. § 416.926 (2012). Whether a child *functionally* equals a listing involves evaluation in terms of six domains: (I) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child has "marked" limitations in two domains or an "extreme" limitation in one domain, the child impairment(s) is functionally equivalent to a listed impairment. 20 C.F.R. § 416.926a(d).

Here, the ALJ found that the minor had severe impairments due to borderline intellectual functioning and ADHD, but determined that her impairments did not meet or medically equal any listed impairment (R. 21). Plaintiff does not appear to challenge this finding in her brief. Rather, Plaintiff contends that: "The medical evidence clearly indicates the claimant has medical conditions that are [sic] satisfy the requirements for meeting the functional listings." Doc. 20 at 9. Plaintiff argues that the ALJ "failed to address" teacher questionnaires, Individual Educational Plans, Bench Mark testing and the opinion of consultative Ronald Seifer, PhD., all of which were "directly contradictory to the ALJ's findings." Doc. 20 at 30. Plaintiff concludes that "the ALJ committed reversible error for failing to consider the evidence in his [sic] determination." *Id.* The Court finds that the evidence cited was addressed *and* considered by the ALJ, and her ultimate decision is supported by substantial evidence.

As noted by the Commissioner, the ALJ discussed the evidence in detail in her opinion. The teacher questionnaires (Exhibit 3E, 12 E) were explicitly referenced throughout the opinion, and

especially in the context of the ALJ's discussion of the functional six domains. For example, the ALJ noted:

> Though some obvious problems were assessed in the area of attending and completing tasks, the teacher did not assess any serious problems within this domain (Exhibit 3E). A later teacher assessment noted a serious problem with refocusing, but no other categories within the domain were assessed to be at a serious or very serious level (Exhibit 12E).

(R. 22, *see also* R. 21-24, 26, 28).

Not only is it plain that the ALJ considered these evaluations, she also gave them weight:

> Finally, the undersigned has considered the opinions of the claimant's teachers. Both noted limitations in the claimant's functionality but no severity of behavioral difficulties. Although the claimant was assessed with some serious problems within some of the categories within the domains, no very serious problems were assessed by either teacher. It is of great consideration that these teachers noted the difference in the claimant's behavior when she was compliant with medications (Exhibits 3E and 12E). Although these opinions are not those of medical professionals, the undersigned has accorded them due consideration. Not only are these teachers presumably taught in the identification of behavioral problems, but these opinions can be accepted as reasonably objective. Therefore, they are accorded some weight.

(R. 23-24).

Plaintiff points to the Individual Education Plan ("IEP") formulated for claimant, which stated, in part: ""due to her disability, [the minor] does not demonstrate reading comprehension at the same level as peers in the regular education classroom;" "is unable to complete basic math operations in the regular education classroom;" and "is unable to write at the same level as her grade level peers." (R. 212-215, included in school records identified as Exhibit 17E).[1] Although the ALJ did not discuss the particulars of the IEP in detail, the ALJ discussed the minor's school records which included the IEP (Exhibits 17E, 12E) throughout the opinion, and acknowledged that the minor was performing "below grade level in school." (R. 26). *See also* R. 22 ("[claimant] works below grade level in reading and math but has shown an ability to do well in spelling and writing (Exhibit 17E/10)." The ALJ stated:

---

[1] After the decision, Plaintiff submitted a May 5, 2009 IEP, which identified similar problems (R. 408-416).

-5-

> In August 2005, the claimant was accorded an accommodation plan to help her with reading comprehension (Exhibit 9E). The claimant's teacher assessed in April 2006 that the claimant had serious problems in reading and math. She required one-on-one assistance and small group instruction but was performing at grade level at the beginning of the school year (Exhibit 3E). The claimant's 3rd grade teacher also noted serious problems in reading and math with below grade level reading affecting the claimant's comprehension in all areas (Exhibit 12E). The claimant's scores on the Woodcock-Johnson III administered in January 2007 showed that she scored an age equivalent of about a year younger in broad reading, broad math, math calculation skills, academic fluency, and academic apps. However, the claimant scored an age equivalent of 10 years 9 months in written expression (Exhibit 13E).
>
> It is of note that the claimant recorded scores of "average progress" or C's while attending Windermere Elementary School (Exhibit 17E/12). Additionally, the claimant reported currently having A's in language arts and social studies, a C in science, and F's in reading and math. The undersigned has considered that the claimant's teacher noted that "there are many gaps in her learning due to the fact that she has missed so many days of school while moving from place to place. We do not know what she is truly capable of because she is not giving her personal best on her classwork. Assignments are often late or incomplete" (Exhibit 17E/11). The claimant has been enrolled in four schools within a two year period (Exhibit 17E/10, 12, 13, and 67). Not only has the claimant undoubtedly suffered academically from moving from school to school, but she has admittedly been without medications for much of the time. These factors would considerably affect her ability within this domain. Special education services were initiated for the claimant in May 2008 to increase her reading comprehension. She was to remain in regular classes with accommodations (Exhibit 17E).

(R. 25). Plaintiff fails to identify anything in the IEP that was not overtly addressed by the ALJ.

Similarly, the ALJ explicitly acknowledged benchmark and other testing,[2] and fully set forth the opinion of Dr. Seifer,[3] giving more weight to the opinion of the other consultants.[4] The ALJ

---

[2]. *See* R. 21 ("The claimant was administered the Wechsler Intelligence Scale for Children Fourth Edition (WISC-IV) in May 2006 and scored a verbal IQ of 83 and full scale IQ of 73 (Exhibit 5F)."); R. 22 ("The claimant tested within the borderline of intellectual functioning when administered the Wechsler Intelligence Scale for Children-IV. She scored a verbal comprehension index of 83, perceptual reasoning index of 71, working memory index of 91, processing speed index of 70, and full scale IQ of 73 (Exhibit 5F)."); and R. 25 ("The claimant's scores on the Woodcock-Johnson III administered in January 2007 showed that she scored an age equivalent of about a year younger in broad reading, broad math, math calculation skills, academic fluency, and academic apps. However, the claimant scored an age equivalent of 10 years 9 months in written expression (Exhibit 13E).").

[3]*See* R. 25 ("The claimant underwent intelligence testing on May 3, 2006. Her scores on the Wechsler Intelligence Scale for Children-IV revealed cognitive functioning within the range of borderline intelligence. She scored a verbal comprehension index of 83, perceptual reasoning index of 71, working memory index of 91, processing speed index of 70, and full scale IQ of 73. Based upon the evaluation, Dr. Ronald Seifer's diagnostic impression was of provisional attention deficit hyperactivity disorder, not otherwise specified; rule out learning disorder, not otherwise specified; and borderline intellectual functioning (Exhibit 5F)."), R. 23 ("The undersigned has considered the opinion of Dr. Ronald Seifer who offered that the findings of his assessment indicated moderate to marked difficulties in maintaining concentration, persistence, or pace (Exhibit

reviewed all of the evidence, evaluated the opinions according to the appropriate standard,[5] and concluded that the minor did not meet, medically equal or functionally equal the Listings, noting, among other things:

> Overall, while the evidence does reveal that the claimant displays some limitations in learning and behavior, she responds to medication. Additionally, this response to medication has been shown to produce better behavior and increased ability to function within the school environment. The undersigned has noted that while the claimant's mother has reported a worsening of behavior, there is no correlation within the reports from the claimant's schools. Even the claimant's demeanor during the hearing was in contrast to her mother's reports of poor and disrespectful behavior. The claimant is still performing below grade level but she has, no doubt, suffered from the frequent changing of schools within the last few years, household changes, and the absence of prescribed medications.

(R. 24). This conclusion is supported by the ample evidence discussed in the opinion.

Plaintiff has failed to identify any evidence that was not adequately considered by the ALJ. Rather, it appears that Plaintiff is pointing to portions of the record as being supportive of another ultimate conclusion. This, however, is not the task of the Court. It is the task of the ALJ to consider the evidence, which is rarely unanimous, and set forth a reasoned basis for her conclusions. The ALJ has done so here.

A final note is in order. The Court is sympathetic to the obvious challenges and difficult circumstances the minor and her family are facing. Supplemental Security Income, however, is a program designed for only those who meet the legal definition of disability (as well as certain income

---

5F). While the undersigned has considered this assessment and accorded it some weight, it is of note that Dr. Seifer qualified that this was a "limited evaluation" and further assessment of ADHD was needed. The only evidence which Dr. Seifer had to consider besides his own "limited evaluation" was the teacher's questionnaire of April 2006. The undersigned accords some weight to Dr. Seifer's assessment but accords more to that of the State agency consultants as they had substantially more evidence to weigh, rendering their opinions more persuasive. Additionally, it must be considered that Dr. Seifer only assessed a "moderate to marked limitation," still supportive of the assessments made by the State agency consultants.").

[4]Plaintiff does not directly challenge the ALJ's evaluation of Dr. Seifer's opinion. Rather, Plaintiff contends that this evidence was not considered. As shown, the record belies this contention.

[5]The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)

standards). The Commissioner has determined that the minor does not meet that definition, and that determination was made in accordance with law and is supported by substantial evidence. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted).

## Conclusion

The administrative decision was made in accordance with proper legal standards and is supported by substantial evidence. It is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record